## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ADAM PIKE
7314 Ramoth Drive
Jacksonville, FL 32226,
and

BRET M. BERRY
514 Frank Shaw Road
Tallahassee, FL 32312,

        Plaintiffs,

   vs.

UNITED STATES DEPARTMENT OF
JUSTICE
1425 New York Avenue, NW, Suite 11050
Washington, DC 20530,

        Defendant.

## COMPLAINT

COME NOW Plaintiffs Adam Pike and Bret Berry, by and through their attorneys Hooper, Lundy and Bookman, P.C., who bring this action against the United States Department of Justice ("DOJ"), alleging as follows:

### PRELIMINARY STATEMENT

1.     This is an action under the Freedom of Information Act, 5 U.S.C. § 552, ("FOIA"), for injunctive and other appropriate relief and seeking the disclosure and release of a single agency record improperly withheld from plaintiffs by DOJ since 2013.

2.     The record withheld is the audio recording of a July 21, 2011 private, confidential conversation between plaintiffs and a yet-to-be identified "doctor." The conversation was recorded surreptitiously without the knowledge or consent of the plaintiffs. While it steadfastly and unjustifiably refuses to disclose the audio recording, DOJ has widely publicized statements allegedly taken verbatim from the July 21, 2011 audio recording in a September 8, 2014 DOJ press release and in a civil False Claims Act ("FCA") complaint filed against plaintiffs that same

day in federal court in the Central District of California. *United States v. Reliance Medical Systems, et al,* no. CV-14-6979 DDP, Central District of California. According to DOJ's complaint in that action, the statements extracted from the July 21, 2011 audio recording establish that plaintiffs violated the provisions of the Medicare/Medicaid anti-kickback statute, 42 U.S.C. §1320a-7b(b), a criminal statute, and thus give rise to liability under the FCA. Earlier, in March 2013, DOJ also examined Mr. Pike about the content of the July 26, 2011 audio recording without disclosing the existence of the recording to his counsel or him and without advising him of the existence of an apparent ongoing criminal investigation.

3.      Based on the September 8, 2014 press release and the September 8 civil complaint, the television, radio and print media, including the CBS Morning Show, NPR and the Wall Street Journal, used DOJ's purported quotations from the July 26, 2011 audio recording to publish highly damaging and false statements about Mr. Pike and Mr. Berry, thus destroying their health care businesses and their reputations for honesty and veracity and irreparably damaging their ability to pursue their occupations and businesses. Among the many adverse collateral consequences of the publication of the highly inflammatory statements purportedly taken from the July 26, 2011 audio recording has been that plaintiffs' banks have recently cancelled all of their accounts and those of their families and related entities.

4.      Notwithstanding DOJ's publication and improper use of the excerpts from the July 26, 2011 audio recording, and despite repeated demands for disclosure of the audio recording, including the instant FOIA request, DOJ steadfastly refuses to disclose the recording to plaintiffs based solely on the conclusory ground that the recording "is protected from disclosure under the FOIA pursuant to 5 U.S.C. § 552(b)(7)(A)" because "disclosure could reasonably be expected to interfere with enforcement proceedings." See DOJ's February 23, 2015 Appeal decision, Exhibit 1 of the accompanying exhibits.

## JURISDICTION AND VENUE

5.      This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). Venue lies in this district under

5 U.S.C. § 552(a)(4)(B).

## PARTIES

6.      Plaintiffs are residents of Florida.  They own and operate a business known as Reliance Medical Systems, LLC, ("Reliance") in Bountiful, Utah.  Reliance is the subject of the record in question and of the civil complaint.  Reliance is an FDA-approved manufacturer of implantable spinal devices.  Reliance has also developed, managed and been affiliated with various physician-owned health care companies in which the physicians/owners design devices and instruments to facilitate implanting them for their own surgeries and for other doctors' use in spinal implant surgeries.  As owners of these affiliated companies, the physicians/owners periodically received ownership distributions in accordance with their ownership interests.  In the pending FCA case, DOJ contends that these distributions are really disguised "kickbacks" to induce doctors to use Reliance products.

7.      DOJ is a Department of the Executive Branch of the United States Government, and includes a civil division and a criminal division.  Also within DOJ is the Office of Information Policy, the office that administers FOIA responses.  DOJ's civil division is authorized to pursue FCA actions, including those based on the violation of the Medicare/Medicaid anti-kickback statute.  DOJ's criminal division may pursue criminal actions, including actions to enforce the Medicare/Medicaid anti-kickback statute.  Anti-fraud enforcement in the Medicare Program is a high enforcement priority for DOJ.

## BACKGROUND

8.      In addition to DOJ's enforcement efforts, the Office of Inspector General of the Department of Health and Human Services ("OIG") is actively involved in the enforcement of anti-fraud measures regarding federal healthcare programs, including Medicare.  Since at least 1985, the OIG has actively scrutinized healthcare joint ventures involving physicians deeming the structures of many of them to be "inherently suspect" under the anti-kickback statute.  The ethics and legality of physician ownership of healthcare joint ventures continue to be the subject of considerable controversy in the health care industry.  Not surprisingly, much of this debate is

fueled by large healthcare companies which fear competition from smaller, doctor-owned healthcare businesses.  Such competition is especially fierce among manufacturers and distributors of implantable spinal devices and instruments even though doctors, themselves, have historically designed and invented most medical devices and instruments.

9.    Mr. Pike and Mr. Berry have substantial experience and expertise in the engineering, manufacturing and distribution of spinal implant devices and the instruments used by surgeons to implant them.  In 2007, they formed Reliance and also began forming physician-owned companies to make, design and distribute spinal implant devices and instruments.  In structuring and operating such companies, they routinely consulted with, and only acted pursuant to the legal advice of, their outside expert health care counsel.  Moreover, persons doing business with plaintiffs, including potential doctors/investors, routinely obtained their own legal advice before investing in the companies.  Plaintiffs always intended to abide by all applicable laws, including the Medicare/Medicaid anti-kickback statute.  Indeed, one of the contemporaneous authorities heavily relied on by plaintiffs and their counsel in structuring and operating their businesses was the 2006 Opinion of the California Attorney General (Cal. Atty. Gen. Op. no. 05-614), concluding that under state and federal law, a physician may prescribe and use a medical device that is distributed by a company in which the physician has an ownership interest.

10.    By 2010, plaintiffs were actively managing Reliance and various physician-owned companies that sold spinal implant devices and the instruments for implanting them to hospitals.  Unknown to plaintiffs, however, in late 2010, two doctors at one of the California hospitals where one of plaintiffs' companies, Apex Medical Technologies ("Apex"), had been selling spinal implant devices began questioning the propriety of surgeries being performed by Dr. Aria Sabit, a physician-owner of Apex.  Dr. Sabit had been aggressively recruited by the California hospital because of his expertise and experience in spinal surgery.  These two doctors eventually filed an FCA qui tam action under seal against Dr. Sabit and the hospital in May 2013. *United States ex rel. Savitch and Proffett v. Sabit and Community Memorial Health System,* no. CV 13-03363 DDP, Central District of California.   According to the allegations in

this qui tam lawsuit, the two complaining doctors met with agents of the FBI in 2010 and 2011 to complain about Dr. Sabit and Apex. Moreover, according to these same allegations, one of the complaining doctors met with Kimberly Brandt, the chief healthcare investigative counsel for the Senate Finance Committee and former attorney for the OIG, on July 9, 2011. He met with Ms. Brandt because of her significant role in the writing of the June 2011 Senate Report entitled "Physician Owned Distributorships (PODs): An Overview of Key Issues and Potential Areas of Congressional Oversight," commonly known as the "Hatch Report." This Report discussed the positions of the proponents and opponents of "PODs" and concluded that there needed to be clear guidance by the OIG and others given to the industry about the legality of the various POD models. (Ironically, the OIG did not issue such guidance until March 26, 2013, well after plaintiffs stopped operating their PODs.)

11. On July 26, 2011, seventeen days after one of the complaining doctors met with Ms. Brandt of the Senate Finance Committee, plaintiffs met with a prospective investor in one of their "PODs." They did not know, however, that this "doctor" had been "wired" (apparently but not certainly by the FBI) to surreptitiously record their conversation. This audio recording is the record sought by plaintiffs in this FCA lawsuit since DOJ eventually went public with selected portions of it (albeit taken completely out of context) without ever disclosing the recording or even a transcript of it to plaintiffs.

12. Apex terminated its relationship with Dr. Sabit in 2012, by which time he had moved from California to Michigan. In the meantime, however, various patients filed medical malpractice actions against Dr. Sabit and the hospital in 2011 and 2012. In early 2013, the two doctors in the qui tam action gave Assistant U.S. Attorney David Finkelstein of DOJ's civil division in Washington, D.C., copies of pleadings and depositions from the various state court malpractice actions. In January 2013, Mr. Finkelstein, in turn, issued civil investigative demands under the FCA to Mr. Pike and Mr. Berry. Pursuant to one of these demands, Mr. Finkelstein took Mr. Pike's deposition on March 5, 2013, during which he questioned Mr. Pike about information Mr. Finkelstein had obtained from the July 26, 2011 audio recording. However, Mr.

Finkelstein did not inform Mr. Pike or his counsel of the existence of the recording until two months later at which time he refused to disclose it but rather described it as an FBI-directed recording.  (Interestingly, the FBI document referring to the July 2011 recording is dated July 2012, and no record has been produced showing how Mr. Finkelstein came into possession of the FBI recording in March 2013.)

13.    Notwithstanding several requests, Mr. Finkelstein continued to refuse to disclose the July 26, 2011 audio recording for the many months prior to his filing of the FCA lawsuit against the plaintiffs.  However, once he filed the FCA civil complaint against plaintiffs on September 8, 2014, he went public with selected excerpts from the recording.  For example, in the complaint (excerpts of which are included in Exhibit 2) at paragraphs 137, 140, 145, 146, 147, 148, 149, 150, 152, 153, 155, 164, 178, 183, 184, 197, and 202, he highlighted and emphasized numerous statements that were purportedly taken from the July 26, 2011 audio recording, including a statement attributed to Mr. Pike, at paragraph 178, about attempting "to get around" the law in structuring and operating Reliance and the related companies.  In actuality,  paragraph 178 of the complaint shows that the "get around" language is Mr. Finkelstein's self-serving characterization of a purported quote from Mr. Pike from the recording about "devis[ing] a plan around" the anti-kickback statute.  The major assertions in the complaint are based on the July 26, 2011 recording.  That same day, September 8, 2014, DOJ published a press release (Exhibit 3) announcing the filing of the case and referring to the July 26, 2011 audio recording when asserting that Reliance was formed as part of a plan "to get around" the anti-kickback statute and further asserting that plaintiffs told prospective doctor investors that they would be paid enough in the first two months "to put their kids through college."  These very inflammatory and misleading quotations were then reported by the media throughout the country.

14.    As indicated above, at all times plaintiffs acted in accordance with the law, as they understood it and were advised of it by their counsel.  Based on his mischaracterization of other documents in the case, plaintiffs are confident that Mr. Finkelstein has taken words

completely out of context or has misquoted them from the recording in order to try to prove his preconceived, unjustified and agenda-driven notion of their wrongdoing.  For example, if the words "get around" had been used by Mr. Pike during the July 26, 2011 conversation, he would have made it clear that plaintiffs were trying to "get around" *violating* the law rather than trying not to get caught for violating the law.  Plaintiffs' standard presentation to prospective investors emphasized the legality of the business structures and operations and the need for the doctors to do what was in the best interests of their patients at all times.  Plaintiffs must assume that the July 26, 2011 recorded presentation was no different than others unless they were somehow intentionally misled by the unidentified, "wired" doctor.  However, without being provided the recording, itself, they have no way of effectively explaining or refuting the characterizations being made by Mr. Finkelstein and repeated by the media and competitors.

**THE SUBMISSION OF THE FOIA REQUEST**

15.     Because DOJ repeatedly refused to disclose the July 26, 2011 recording and because of the harm caused by the allegations purportedly based on the recording, plaintiffs, through counsel, filed a FOIA request for the recording on October 2, 2014.  *See* Exhibit 4 of the accompanying Exhibits.  Among other things, the October 2, 2014 request included a copy of the September 8, 2014 FCA complaint (which is excluded from Exhibit 4 due to its size) and identified the many paragraphs of the complaint that referred to excerpts from the July 26, 2011 recording.  The October 2 request also included copies of correspondence with DOJ about the recording and other attachments.  Plaintiffs requested that the processing of the request be expedited because of the irreparable harm they were suffering from DOJ's selected publication of its contents.

16.     On October 6, 2014, DOJ's civil division denied the request to expedite its processing and requested advanced payment of fees of $275.00, which plaintiffs promptly submitted.  Exhibit 5.  By letter dated October 24, 2014 (Exhibit 6), DOJ's civil division issued a "final response" denying the request for disclosure of the audio recording based on 5 U.S.C. § 552(b)(5) [exempting from disclosure inter- and intra-agency communications protected by

attorney work product privilege], and 5 U.S.C. § 552(b)(7)(A) [exempting from disclosure the release of records that could reasonably be expected to interfere with law enforcement activities].

17.     By letter dated October 28, 2014 (Exhibit 7), plaintiffs, through counsel, appealed the October 24, 2014 response to DOJ's Office of Information Policy.  The appeal included the prior correspondence and other information.  Plaintiffs also presented legal argument supporting the disclosure of the July 26, 2011 audio recording.  Plaintiffs expressly pointed out that DOJ must be deemed to have waived any right to withhold the recording from disclosure due to its widespread publishing of selected quotations from the recording and by DOJ's other uses of it.

18.     By letter dated February 23, 2015 (Exhibit 1), which plaintiffs did not receive until February 27, 2015 (well after the 20-day statutory limit for responding to appeals), DOJ's Office of Information Policy denied the appeal.  It modified the previous denial by eliminating reference to Section 552(b)(5) but continued to rely on Section 552(b)(7)(A) as the basis for denying the appeal.  Once again, DOJ contended that the release of the recording could reasonably be expected to interfere with law enforcement proceedings.  The February 23, 2015 denial letter does not identify any such proceedings or their current status.

### CAUSE OF ACTION

19.     DOJ is improperly withholding from disclosure the July 26, 2011 audio recording. Even if the recording were relevant to some unidentified enforcement proceeding, the fact that DOJ has already widely published excerpts from the recording constitutes a waiver of any law enforcement exemption under Section 552(b)(7)(A).

20.     Moreover, under the facts and circumstances here, the continuing withholding of the July 26, 2011 recording deprives plaintiffs of due process of the law by unduly interfering with their liberty interests.  Specifically, the previously published allegations, purportedly based on the excerpts from the July 26, 2011 recording, accuse plaintiffs of criminal wrongdoing and fraud and thus severely impair their reputation for honesty.  Plaintiffs vehemently deny such accusations.  Yet, plaintiffs continue to be denied the opportunity to refute such allegations by being denied access to the audio recording.  The allegations from the recording have not only

destroyed plaintiffs' reputations but have also altered their status under the law by depriving them of their businesses and their ability to pursue their occupations, and by interfering with other such legally protected relationships as their right under the law to maintain bank accounts and to obtain financial credit from commercial banks.

### PRAYER FOR RELIEF

Wherefore, plaintiffs pray that this Court:

A.    Provide for expeditious proceedings in this matter;

B.    Order DOJ to produce and disclose the July 26, 2011 recording;

C.    Award plaintiffs their costs and reasonable attorney's fees incurred in this action; and

D.    Grant such other relief as the Court deems just and proper.

DATED: March 2, 2015

Respectfully submitted,
HOOPER, LUNDY & BOOKMAN, P.C.

By:  /s/ Kelly A. Carroll

Kelly A. Carroll (DC Bar No. 1018485)
401 9th Street, NW, Suite 550
Washington, DC 20004
Phone:    (202) 580-7700
Fax:    (202) 580-7719
E-Mail:    kcarroll@health-law.com

Patric Hooper (CA Bar No. 57343)*
1875 Century Park East, Suite 1600
Los Angeles, CA 90067
Phone:    (310) 551-8111
Fax:    (310) 551-8181
E-Mail:    phooper@health-law.com

*Counsel for Plaintiffs Adam Pike and
Bret M. Berry*

*\*Motion for Admission Pro Hac Vice to Be Filed*