UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ADAM PIKE, *et al.* ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES DEPARTMENT OF ) <br> JUSTICE, ) <br> ) <br> Defendant. ) <br> ) | Civ. No. 15–cv-0301 (KBJ) |

## MEMORANDUM OPINION

On July 26, 2011, a government informant recorded Plaintiffs Adam Pike and Bret Berry having a conversation. The recording was created without Plaintiffs' knowledge, and once they learned about it (which occurred because excerpts from the transcribed conversation were filed in a related civil lawsuit), Plaintiffs requested a copy of the complete audio recording and the entire written transcript from the U.S. Department of Justice ("DOJ" or "Defendant") under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). In response to the FOIA request, DOJ located the audio recording and the transcript of that recorded conversation, but it withheld these records on the grounds that they were exempt from release under FOIA because producing them would interfere with an ongoing criminal investigation. Plaintiffs have filed the instant lawsuit to challenge the agency's conclusion that the records are exempt from disclosure, and they have asked this Court for an order that requires the release of the transcript and audio recording in their entirety. (*See generally* Compl., ECF No. 1.)

Before this Court at present are the parties' cross-motions for summary judgment. (*See* Pls.' Mot. for Summ. J. ("Pls.' Mot."), ECF No. 8; Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 10.) DOJ contends that it has properly withheld the entire audio recording and transcript under FOIA Exemption 7(A) because the recording and transcript were created for law enforcement purposes, and because the disclosure of these records as a whole would, among other things, interfere with prospective criminal enforcement proceedings and alert suspects to the ongoing investigation, thereby allowing them to elude detection. (*See* Def.'s Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), ECF No. 10-2, at 8–10.)[1] Additionally, and presumably in the alternative, Defendant contends that the withholding was proper under FOIA Exemption 7(D), because the source of the recording was an FBI confidential informant whose identity and information are protected from disclosure under the FOIA. (*See id.* at 10–12.) In their cross-motion, Plaintiffs counter that Defendant previously published excerpts of the transcript of the recording in the context of a civil action, and therefore, a substantial portion of the information at issue is already in the public domain. (*See* Pls.' Mem. in Supp. of Pls.' Mot. ("Pls.' Mem."), ECF No. 8-1, at 11–13.) According to Plaintiffs, this means that Defendant has waived any reasonable purpose or justification for withholding the disputed records in their entirety under Exemptions 7(A) and 7(D). (*See id.* at 11–15; *see also* Pls.' Mem. in Opp'n to Def.'s Mot. ("Pls.' Opp'n"), ECF No. 14, at 4–5.)

---

[1] Page numbers herein refer to those that the Court's electronic case filing system automatically assigns.

For the reasons explained below, this Court concludes that the Defendant has shown that the records at issue in this matter satisfy the requirements of FOIA Exemption 7(A), and thus, absent any waiver, the government is entitled to withhold both the audio recording and the transcript in their entirety.  However, because the government previously publicly disclosed certain excerpts from the transcript, it has waived the right to withhold those same written excerpts from disclosure in the context of this FOIA action.  Consequently, both parties' cross-motions for summary judgment will be **GRANTED IN PART** and **DENIED IN PART**, and Defendant must produce those parts of the written transcript that mirror the excerpts the government has previously released.  A separate order consistent will this memorandum opinion will follow.

## I.   BACKGROUND

### A.   Relevant Facts[2]

Plaintiffs Pike and Berry are the subject of an ongoing fraud investigation that the Federal Bureau of Investigation ("FBI") and DOJ are conducting regarding an alleged "kickback" scheme that involves Reliance Medical Systems LLC (Plaintiffs' company) and other third parties.  (*See* Pls.' Stmt. of Material Facts, ECF No. 8-2, ¶ 2; Def.'s Resp. to Pls.' Stmt. of Material Facts, ECF No. 15-1, at 2.)  The details of the underlying fraud are not material to the instant action; it suffices to say here that the investigation led federal authorities to file a civil lawsuit against Plaintiffs and other third parties in the U.S. District Court for the Central District of California under the

---

[2] Unless otherwise noted, the basic facts that underlie this FOIA action are not in dispute.

False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA").  (*See* Pls.' Stmt. of Material Facts ¶ 3; Def.'s Resp. to Pls.' Stmt. of Material Facts at 3.)  In that lawsuit, which is currently pending, the complaint references and attaches several excerpts from the transcript of an audio recording dated July 26, 2011.  (*See* Pls.' Stmt. of Material Facts ¶ 3; Def.'s Resp. to Pls.' Stmt. of Material Facts at 3.)  According to DOJ, an undisclosed FBI source who agreed to assist in the investigation made the audio recording under the supervision of law enforcement agents.  (*See* Def.'s Stmt. of Material Facts, ECF No. 10-1, ¶¶ 3–4.)[3]

On October 2, 2014, Plaintiffs' counsel filed a FOIA request with DOJ's Civil Division, seeking "a copy of the recording and any transcript" on an expedited basis.  (FOIA Request, Compl. Ex. 4, ECF No. 1-1, at 37.)  DOJ located both records, and subsequently explained that both were being withheld in their entirety pursuant to two FOIA Exemptions: 7(A) and 5.  (*See* Decl. of James M. Kovakas ("Kovakas Decl."), Ex. A to Def.'s Mot., ECF No. 10-3, ¶¶ 3–4); *see also* 5 U.S.C. §§ 552(b)(7)(A), (b)(5).  DOJ stated that it was withholding the records under Exemption 7(A) because disclosure would risk interference with ongoing law enforcement proceedings, and that the same withholding was also justified under Exemption 5 because the records requested were inter-agency or intra-agency documents protected under the attorney work-product privilege.  (*See* DOJ's Final FOIA Response, Compl. Ex. 6, ECF No. 1-1, at 52–53.)

---

[3] The parties disagree about the degree of the government's involvement in the creation of the recording.  Defendant maintains that the record was created by a "cooperating witness under the supervision of FBI Special Agents" (Def.'s Stmt. of Material Facts ¶ 3), while Plaintiffs argue that there is not enough information in the record evidence to ascertain "whether the recording was initiated and monitored by law enforcement" (Pls.' Stmt. of Material Facts ¶ 5).

4

### B.     Procedural History

Plaintiffs appealed DOJ's withholding decision to the agency's Office of Information Policy, which affirmed on the ground that the withholding was permitted under Exemption 7(A).  (*See* Pls.' Stmt. of Material Facts ¶¶ 7–8; Def.'s Stmt. of Material Facts ¶¶ 8–9.)  Plaintiffs then brought the present lawsuit, which was filed on March 2, 2015, and seeks a court order requiring "DOJ to produce and disclose the July 26, 2011 recording[.]"  (Compl. at 9.)  The complaint alleges that DOJ has invoked Exemption (7)(A) improperly, and that, in any case, the agency has waived its right to claim an exemption from releasing the records because it previously widely published the excerpts from the recording's transcript.  (*See id.* ¶ 19.)[4]  Per this Court's order, the parties subsequently filed cross-motions for summary judgment with respect to the issue of whether or not the requested records have been properly withheld.  (*See* Min. Order of Apr. 5, 2015.)

DOJ's motion for summary judgment argues that FOIA Exemption 7(A), which exempts from disclosure investigatory records that could be used in an enforcement action, authorizes the withholding in this case because disclosure of the records Plaintiffs seek would risk interference with an ongoing criminal investigation into health care fraud and related enforcement proceedings.  (*See* Def.'s Mem. at 8–10.)  The agency also asserts that Exemption 7(D) authorizes the withholding of the audio recording and transcript because the release of these records could reasonably be expected to disclose the identity of the FBI's confidential source (*see* Def.'s Mem. at

---

[4] Although the complaint also alleges that DOJ's withholding deprived Plaintiffs of due process by "unduly interfering with their liberty interests" (Compl. ¶ 20), Plaintiffs have expressly relinquished this claim (*see* Pls.' Mem. at 13 n.3).

10–12), and that the government's prior release of certain transcript excerpts demonstrates that all reasonably segregable material has already been disclosed (*see id.* at 14 (arguing that disclosure of any further information beyond the quotes included in the FCA complaint "would significantly interfere with the ongoing criminal investigation")).

For their part, Plaintiffs argue that the government's prior publication of a substantial amount of the recording's transcribed content in the context of the FCA complaint and in an accompanying press release means that DOJ has waived its right to assert any exemption under the FOIA. (*See* Pls.' Mem. at 11–13.) Plaintiffs also maintain that, "[g]iven the breadth of the previous public disclosures[,]" there is no "[t]ruthful and [r]easonable [b]asis" for DOJ to assert that "disclosure of the remaining portion of the audio recording would interfere with a *legitimate* government activity" within the meaning of Exemption 7(A). (*Id.* at 14 (emphasis in original).) And they further insist that the circumstances in this case are "not of a nature warranting an implied assurance of confidentiality" for Exemption 7(D) purposes. (*Id.* at 17; *see also id*. (asserting that DOJ has not shown that the agency "expressly assured the source of the confidentiality of his involvement" and that, regardless, DOJ could redact the identity of the source from the recording or the transcript).)

The parties' cross-motions are now ripe for this Court's review.

## II.   LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev*., 484 F. Supp. 2d 68, 73

(D.D.C. 2007)).  A district court deciding a motion for summary judgment in a FOIA case must review the record *de novo*, and it has the authority "to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  "In reviewing the agency action, the Court must analyze the facts and inferences in the light most favorable to the FOIA requester."  *Unrow Human Rights Impact Litig. Clinic v. U.S. Dep't of State*, 134 F. Supp. 3d 263, 271 (D.D.C. 2015).

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment when the pleadings, materials on file, and affidavits "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In a FOIA case, the government bears the burden of justifying the withholding when defending the agency's decision, and "conclusory assertions of privilege will not suffice to carry [that] burden of proof[.]"  *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980).  The Court may grant summary judgment on the grounds that the agency's supporting affidavits and declarations sufficiently describe the information in the withheld documents, provide "the justifications for nondisclosure with reasonably specific detail," and "demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith."  *Wolfson v. U.S.*, 672 F. Supp. 2d 20, 25 (D.D.C. 2009) (alteration in original) (internal quotation marks omitted) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  Moreover, because agency affidavits "are accorded a presumption of good faith," *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), "[u]ncontradicted, plausible

affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail[,]" *Ancient Coin Collectors Guild v. U.S. Dep't of State,* 641 F.3d 504, 509 (D.C. Cir. 2011).

### III. ANALYSIS

The parties here dispute whether the government has properly withheld the requested audio recording and written transcript—in whole or in part—under an applicable FOIA Exemption. As explained below, this Court agrees with DOJ that the audio recording and its transcript satisfy the requirements of Exemption 7(A), and that, as a result, these records are eligible for withholding in their entirety in response to Plaintiffs' FOIA request. But the Court also agrees with Plaintiffs to a certain extent: it concludes that the government's public disclosure of certain transcript excerpts waived Defendant's right to withhold those same excerpted portions of the transcript in the context of this FOIA case. Notably, the government's waiver extends only to the publicly-available portions of the transcript and does not reach the audio-recorded version of those same transcript excerpts, because no portion of the audio recording has ever been released, and the information an audio recording conveys differs from a written transcript. Thus, DOJ can continue to withhold both the non-publicly released parts of the transcribed conversation and the entire audio recording, but the portions of the written transcript that duplicate the information the government previously released must be produced immediately.

#### A. The Records At Issue Satisfy The Requirements Of FOIA Exemption 7(A)

FOIA Exemption 7 protects from disclosure records or information compiled for law enforcement purposes, but only to the extent such disclosure would cause one of the

harms enumerated in its subsections. *See* 5 U.S.C. § 552(b)(7). The harm that Exemption 7(A) addresses occurs when "the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings," 5 U.S.C. § 552(b)(7)(A); consequently, the government must offer a sufficiently detailed explanation of the alleged interference in order to justify the withholding of information on this basis, *see Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir. 1973). Importantly, "[i]n enacting this exemption, Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003) (internal quotation marks and citation omitted). And the D.C. Circuit has long acknowledged that the principal "purpose of [the] exemption is to prevent [harm] to the Government's case in court by not allowing litigants early or greater access to agency investigatory files than they would otherwise have[.]" *Mapother v. U.S. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993) (second alteration in original) (internal quotation marks omitted) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224–25 (1978)).

"To fall within Exemption 7, documents must first meet a threshold requirement: that the records were compiled for law enforcement purposes." *Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.–Mexico*, 740 F.3d 195, 202–03 (D.C. Cir. 2014) (internal quotation marks and citation omitted); *see also Pratt v. Webster*, 673 F.2d 408, 413–19 (D.C. Cir. 1982). With respect to this preliminary question, this Court finds that the records at issue here—the audio recording of Plaintiffs' July 26th conversation and its written transcript—

"unquestionably meet[] the threshold to invoke Exemption 7" because the government has shown that they were created by a cooperating witness "at the FBI's direction during the FBI's criminal investigation into potential violations of multiple federal laws and regulations relating to health care fraud." (Def.'s Mem. at 8; *see also* Kovakas Decl. ¶ 12 (explaining that the recording was generated "at the direction and under the supervision of FBI Special Agents" investigating health care fraud).) An agency's "law enforcement" duty "refers to the act of enforcing the law, both civil and criminal[,]" *Pub. Emps. for Envtl. Responsibility*, 740 F.3d at 203, and DOJ's investigation and prosecution of Plaintiffs for violations of criminal and federal statutes falls squarely within that definition. *See, e.g.*, *Blackwell v. F.B.I.*, 646 F.3d 37, 40 (D.C. Cir. 2011) (holding that, because the records sought were "generated in the course of investigating and prosecuting [plaintiff] on insider trading charges[, they] were quite obviously related to the [agency]'s law enforcement duties" and "easily qualif[ied]" for the Exemption 7 threshold).

Moreover, the record evidence plainly establishes that there is a connection between these plaintiffs and a possible violation of federal law (*see, e.g.*, FCA Civil Complaint, Compl. Ex. 2, ECF No. 1-1, at 4–31), which is all that is required to support DOJ's assertion that the law-enforcement-purposes requirement has been met. *See Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998) (explaining that a defendant invoking Exemption 7 need only "establish a rational nexus between the investigation and one of the agency's law enforcement duties, and a connection between an individual or incident and a possible security risk or violation of federal law" (internal quotation marks and citations omitted)); *see also Jefferson v. U.S. Dep't of*

*Justice*, 284 F.3d 172, 176–77 (D.C. Cir. 2002) (stating that, when assessing whether or not this threshold requirement has been met, the court's "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding" (internal quotation marks and citations omitted)). Therefore, this Court easily concludes that the threshold Exemption 7 requirement that the recording and transcript qualify as law enforcement records is satisfied.

The second aspect of the Exemption 7(A) inquiry—whether disclosure of the records Plaintiffs seek could reasonably be expected to interfere with DOJ's investigation in a manner that implicates subdivision (A)—requires a two-step analysis: a court considers, first, whether a law enforcement proceeding is pending or prospective, and second, whether disclosure of the requested records and information therein could reasonably be expected to cause some articulable harm to that proceeding. *See Cudzich v. U.S. Immigration & Naturalization Servs.*, 886 F. Supp. 101, 106 (D.D.C. 1995). Each of these considerations supports the applicability of the exemption under the circumstances presented here.

First, Defendant has provided (*ex parte* and *in camera*) the declarations of DOJ and FBI officials to support the representation that there is an "ongoing criminal investigation by DOJ and the FBI into Plaintiffs' activities and the potential criminal activities of third parties." (Def.'s Mem. at 9; *see, e.g.*, Decl. of Jonathan T. Baum ("Baum Decl."); Decl. of David L. Bowdich ("Bowdich Decl.").) Such evidence is sufficient to establish the pendency of a pertinent law enforcement proceeding, *see*

*Adair v. Mine Safety & Health Admin.*, No. 08-cv-1573, 2009 WL 9070947, at *6 (D.D.C. Sept. 23, 2009), and, indeed, Plaintiffs do not appear to argue otherwise.

Second, with respect to the requirement that a defendant in a FOIA case establish *how* the requested documents would interfere with the pending criminal enforcement proceeding, *see Cudzich*, 886 F. Supp. at 106, it is well established that an agency may withhold records to "prevent disclosures which might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence." *Maydak v. U.S. Dep't of Justice,* 218 F.3d 760, 762 (D.C. Cir. 2000); *see also F.B.I. v. Abramson*, 456 U.S. 615, 621 (1982) (explaining that Exemption (7)(A) operates "to prevent premature disclosure of investigatory materials which might be used in a law enforcement action"). Moreover, an "interference" or "articulable harm" to the government's case encompasses a wide variety of potential problems, including the risk that disclosure will reveal

> (1) evidence, (2) witnesses, (3) prospective testimony, (4) the reliance placed by the government upon the evidence, (5) the transactions being investigated, (6) the direction of the investigation, (7) government strategy, (8) confidential informants, (9) the scope and limits of the government's investigation, (10) prospective new defendants, (11) materials protected by the Jencks Act, (12) attorney work product, (13) the methods of surveillance, [and] (14) subjects of surveillance.

*Cudzich*, 886 F. Supp. at 106 n.1 (alteration in original) (internal quotation marks and citation omitted).

In the cross-motion for summary judgment that Defendant has submitted here, the government specifically states that disclosure of the audio recording and transcript of Plaintiffs' conversation "would prematurely: (a) reveal the nature, scope, focus, or

12

direction of the investigation; (b) identify suspects and alert them about the investigations, which would allow them to elude detection or tamper with evidence; and (c) compromise evidence and sensitive law enforcement information." (Def.'s Mem. at 9.) The declarations upon which DOJ's motion rests likewise discuss the extent to which disclosure of the entire recording could interfere with ongoing law enforcement proceedings, and explain that there is a risk that evidence and witness tampering could occur and that the scope and direction of the investigation would be revealed. (*See* Baum Decl. ¶¶ 32–35; Bowdich Decl. ¶ 6.) In addition, although DOJ's motion invokes another FOIA exemption when it asserts the impropriety of disclosing the source's identity (*see* Def.'s Mem. at 10–12 (discussing Exemption 7(D)), the government's affiants specifically address the harm and interference that revealing the source's identity would cause to the ongoing criminal investigation and process (*see, e.g.*, Kovakas Decl. ¶ 8, 11 (explaining that revealing the source's identity would lead to "possible harm to, or intimidation of," the source and other potential witnesses, which would impede their continued cooperation, "forever eliminate that source as a future means of obtaining information[,]" and ultimately "severely hamper law enforcement efforts to detect and apprehend" the suspects of their investigation)).

      This Court also finds no reason to question or doubt the representations that the government and its affiants have made regarding the potential risks and harm, and the only plausible argument that Plaintiffs make in this regard is their contention that, under the circumstances presented here, the records must not be all that sensitive because the government has previously released substantial portions of them to the public. (*See* Pls.' Opp'n at 2 ("[N]ow that 'the cat is out of the bag' about the

recording, no legitimate government purpose will be served by DOJ continuing to withhold the recording from the public." (emphasis omitted)).) This contention is unavailing as a matter of pure logic: the mere fact that the government has chosen to release some parts of a protected document—and bear the brunt of the harm that results—does not *a fortiori* mean that releasing the entire document would not be harmful. *See Ctr. for Nat'l Sec. Studies*, 331 F.3d at 930–31 (finding that "[t]he disclosure of a few pieces of information in no way lessens the government's argument that complete disclosure would . . . have negative effects on the investigation"). What is more, this assertion also plainly contradicts Congress's clear intent with respect to the operation of the FOIA; that is, the government is unquestionably authorized to withhold portions of records at the same time that it is releasing other parts, *see Abramson*, 456 U.S. at 626 (noting that "it is permissible for an agency to divide the record into parts that are exempt and parts that are not exempt, based on the kind of information contained in the respective parts"), and to insist, as Plaintiffs do here, that significant releases somehow bear on the question of the extent to which the redacted parts can properly be withheld is also manifestly inconsistent with the text of the FOIA statute, *see* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").

     In sum, there is no dispute that the recording and its transcript were made for law enforcement purposes, and based on the record evidence that the government has presented, this Court finds that there is a reasonable likelihood that disclosure of the entire recording and transcript would interfere with the ongoing criminal investigation

into Plaintiffs' activities and the potential criminal liabilities of third parties in a harmful manner. As a result, the Court agrees with Defendant that Exemption 7(A) applies and that the government has the authority to withhold the entire audio recording and the corresponding transcript on this basis.

    **B.**     **The Government Has Waived Its Right To Withhold The Portions Of The Written Transcript That Mirror The Excerpts It Previously Disclosed, But It May Continue To Withhold The Remainder Of The Transcript And The Entire Audio Recording**

It is well settled that "materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999); *see also id.* ("[T]he logic of FOIA mandates that where information requested is truly public, then enforcement of an exemption cannot fulfill its purposes." (internal quotation marks and citation omitted)). Of course, it is also well established that this public-domain doctrine is not without limits. A party who is seeking disclosure of previously released information is entitled to "receive no more than what is publicly available[,]" *id.* at 555, and thus "must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld[,]" *Afshar v. U.S. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983). In other words, "[f]or the public domain doctrine to apply, the specific information sought must have already been disclosed and preserved in a permanent public record." *Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 836 (D.C. Cir. 2001) (internal quotation marks and citation omitted); *see also Wolf v. C.I.A.*, 473 F.3d 370, 378 (D.C. Cir. 2007) (noting that "[p]rior disclosure of *similar* information does not suffice" (emphasis added)).

15

Based on these established principles, this Court concludes that DOJ must release the portions of the written transcript that duplicate the excerpts that the government previously disclosed as part of the FCA complaint and press release. DOJ does not dispute that quotes from the written transcript of the audio recording—a record that Plaintiffs have requested in the instant FOIA action—appeared in the complaint the government filed in a civil FCA case on September 8, 2014. (*See* Def.'s Resp. to Pls.' Stmt. of Material Facts at 3; *see also* FCA Civil Complaint at 4–31; DOJ Press Release, Compl. Ex. 3, ECF No. 1-1, at 32–34.) And, indeed, that complaint, which was publicly disclosed, reproduced excerpts from the written transcript *verbatim*; therefore, it is clear that those specific excerpts do in fact exist in the public domain. *See Cottone*, 193 F.3d at 554 (noting that court documents become part of the public domain and collecting cases); *In re Nat'l Broad. Co.*, 653 F.2d 609, 614 (D.C. Cir. 1981) ("[T]he general rule is that a trial is a public event, and what transpires in the court room is public property." (brackets omitted) (internal quotation marks omitted)). Given this finding, this Court concludes that DOJ has waived its right to withhold these portions of the written transcript in the context of this FOIA dispute and must now release the portions of the transcript that duplicate exactly the information quoted in the FCA complaint and press release. *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 963 F. Supp. 2d 6, 15 (D.D.C. 2013) (recognizing the "simple rule that the government must release information that has been 'disclosed and preserved in a permanent public record'" (quoting *Students Against Genocide*, 257 F.3d at 836)); *Cottone*, 193 F.3d at 557 (remanding the case "with instructions to compel the FBI to release those tapes" that are in the public domain); *cf. Fitzgibbon v. C.I.A.*, 911 F.2d 755, 765 (D.C. Cir.

1990) (explaining that the disclosure of public-domain information "may be compelled even over an agency's otherwise valid exemption claim").[5]

Plaintiffs are wrong to insist that the government's disclosure of some, but not all, of the transcript warrants a court order compelling the release of *all* of that document. (*See* Pls.' Mem at 12, 13 (arguing that it would be "extremely damaging and grossly unfair" if DOJ is permitted to disclose only the publicly available portions that cast a "negative" light upon Plaintiffs, and can withhold the non-public remaining portions that include "exculpatory and other contextual information").) This argument seems to be in the nature of a *Brady* concern, *see Brady v. Maryland*, 373 U.S. 83 (1963), but this is a FOIA case, and in this context it is clear beyond cavil that, "as a simple factual matter, publication of part of a document does not put the rest into the public domain[,]" *Ancient Coin Collectors Guild*, 641 F.3d at 510.[6] "And this is as it should be; for while the logic of FOIA postulates that an exemption can serve no purpose once information—including sensitive law-enforcement intelligence—becomes public," a court must assure itself that "the information sought is truly public and that

---

[5] The fact that Plaintiffs already have access to the identical information that must be released (through the FCA complaint itself) is of no moment. DOJ argues that "[g]iven their possession of the civil FCA Complaint and the corresponding press release, Plaintiffs already have the only information subject to waiver" (Def.'s Mem. in Opp'n to Pls.' Mot. ("Def.'s Opp'n"), ECF No. 15, at 8), and that may, in fact, be so. But that does not relieve the agency of its obligation under the FOIA to release non-exempt material responsive to Plaintiffs' request. In *Niagara Mohawk Power Corp. v. U.S. Department of Energy*, 169 F.3d 16 (D.C. Cir. 1999), the D.C. Circuit specifically addressed this apparent redundancy, *see id*. at 19 (asking, "if the information is publicly available, one wonders, why is [the plaintiff] burning up counsel fees to obtain it under FOIA?"), and it concluded that "the logic of FOIA compels the result: if identical information is truly public," then the agency record is not exempt and must be disclosed, *id. See generally U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 153 (1989) (explaining that "Congress surely did not envision agencies satisfying their disclosure obligations under the FOIA simply by" directing the requesters to a publicly available version).

[6] Notably, as the government correctly points out (*see* Def.'s Opp'n at 3), the "FOIA is not a substitute for discovery in criminal cases" or other civil suits against Plaintiffs, *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1177 (D.C. Cir. 2011).

17

the requester [will] receive no more than what is publicly available before [it] find[s] a waiver." *Cottone*, 193 F.3d at 555 (internal quotation marks omitted). Plaintiffs have not shown that the government has released from the transcript of the audio recording any publicly available information other than the excerpts quoted in the FCA complaint and press release. And nowhere in the FOIA statute or in related case law is the government required to produce otherwise-exempted information on the ground that withholding it would allegedly result in unfairness or disadvantage to the requesting party. *See Pub. Citizen v. U.S. Dep't of State*, 11 F.3d 198, 204 (D.C. Cir. 1993) (rejecting the argument that "it is unfair" to "permit [an agency] to make self-serving partial disclosures" in the FOIA context and noting that those contentions "are properly addressed to Congress, not to [the] court"); *Williams & Connolly v. S.E.C.*, 662 F.3d 1240, 1245 (D.C. Cir. 2011) (observing that, for FOIA purposes, "what harm the requester might suffer from not getting the information" is irrelevant). Accordingly, the non-public portions of the transcript remain exempt from disclosure and can be properly withheld under Exemption 7(A). *See supra* Part III.A.

The same is true for the entirety of the audio recording. Under binding precedent, *written* transcripts of recordings do not contain information that is identical to the *audio* recorded version. *See New York Times Co. v. NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990) (en banc). No less an authority than the D.C. Circuit has recognized that "[t]he information recorded through the capture of a person's voice is distinct and in addition to the information contained in the words themselves[,]" *id.* at 1006, and thus, the audio format of a recorded conversation inherently conveys new information not otherwise found in the transcript of a recording alone, *see id.* at 1005. As a result,

18

the D.C. Circuit has held that, although information the government possesses in both written and audible form is "equally covered by the general norm of disclosure [under the FOIA], and equally subject to the same specific exemptions therefrom[,]" *id.* at 1005, a court's analysis of whether "the lexical and non-lexical aspects of a file" are exempt will not always be identical because each component may very well "convey different information" for FOIA purposes, *id.*

So it is here. Although the transcript excerpts that have been publicly quoted contain words that are identical to the words spoken in the audio version of those same excerpts, DOJ asserts that the voice inflection in the audio version reveals additional information; specifically, the *identity* of the individual source who created the recording. (*See* Def.'s Mem. at 12 (claiming that disclosure of the "source's voice and/or its statements" would likely "expos[e] [its] identity]").) This information is entitled to be withheld under Exemption 7(A) for the reasons explained above, *see supra* Part III.A, and no part of the audio version of the recorded conversation has ever been publicly disclosed, which means that the government has not waived its right to continue to withhold the information that the audio recording conveys pursuant to Exemption 7(A). *Cf. Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1280 (D.C. Cir. 1992) (holding that the agency must "release *only* those portions of the tapes that [the plaintiff] can show, through newspaper accounts or other permanent records, were *played in the courtroom*" (second emphasis added)). Put another way, this Court concludes that the additional, distinct information contained in the audio format of the recorded July 26th conversation does not reside in the public domain, and thus, despite

the release of corresponding written transcript excerpts, the entire audio recording remains exempt from disclosure.

## IV. CONCLUSION

It is clear on the instant record that DOJ has provided sufficiently detailed explanations to justify the withholding of information in the disputed records pursuant to FOIA Exemption 7(A). In light of the government's affidavits, which are entitled to be afforded substantial weight, it is both logical and plausible that the disclosure of the audio recording and the entire written transcript could interfere with the ongoing criminal investigation and, therefore, may be withheld under FOIA Exemption 7(A). However, DOJ has waived its right to withhold the portion of the transcript that it has already placed into the public domain via the FCA complaint and press release. Accordingly, and as set forth in the accompanying order, both parties' motions for summary judgment will be **GRANTED IN PART** and **DENIED IN PART**, and this Court will order DOJ to release in response to Plaintiffs' FOIA request those limited portions of the written transcript that duplicate *verbatim* the quoted information in the FCA complaint and press release.

DATE: September 20, 2016        *Ketanji Brown Jackson*
                                KETANJI BROWN JACKSON
                                United States District Judge